Monte M. OLENICK, Plaintiff,

v.

Wilbur M. BRUCKER, Secretary of the Department of the Army, Defendant.

Civ. A. No. 3006–58.

United States District Court
District of Columbia.

May 18, 1959.

494

Victor Rabinowitz, New York City, and David Rein, Washington, D. C., for plaintiff.

Leo J. Michaloski, Raymond A. Westcott, Dept. of Justice, Washington, D. C., for defendant.

SIRICA, District Judge.

This is a suit to declare null and void the action of the Secretary of the Army in discharging plaintiff from the United States Army Reserve, Ready Reserve, by means of an "undesirable discharge" prior to the normal expiration of his military service, and to have this Court direct the Secretary to issue an "honorable" discharge in its place.

The plaintiff was inducted into the Army on February 13, 1953, under the Universal Military Training and Service Act of 1948, as amended, 50 U.S.C.A. Appendix, § 451 et seq.

He was honorably separated from active service on December 15, 1954, to complete eight years service in the Reserve as provided by the above statute.

In January, 1956, the office of the Adjutant General wrote a letter to the plaintiff in which it was stated that information had been received by the Department of the Army which furnished reason to believe that plaintiff's retention in the Army Establishment would not be clearly consistent with the interests of national security in accordance with Army Regulation 604–10 dealing with the Military Personnel Security Program. Three items of adverse informa-

tion were set forth in this letter, and two of them related to activities that took place in 1955, while plaintiff was a member of the Ready Reserves. These two were specified as follows:

"a. You are a member of the Labor Youth League, an organization cited in 1950 as a Communist front by the Attorney General of the United States, and in June, 1955, you attended a social affair sponsored by that organization * * *.

"b. In June 1955 you attended the Jefferson School of Social Science, an organization cited in 1949 as an 'adjunct of the Communist Party' by the Attorney General of the United States * * *".

The letter also informed the plaintiff that he must decide to take one of four alternative courses of action:

(1) Elect not to reply to the allegations;

(2) Within 5 days of receipt of the letter, submit a request in writing to the Commanding General, First Army, for a personal appearance hearing before a "Field Board" of inquiry;

(3) In lieu of appearance before a board, submit within 15 days a letter of rebuttal together with such affidavits, statements or other documentary evidence as he may desire to submit;

(4) Or, in lieu of further proceedings, request retirement, if eligible, or request discharge.

Plaintiff chose to reply to the allegations by letter rather than to submit to a hearing. He stated, among other things, that the effect of any discharge less than honorable was punitive in nature; that any punishment because he engaged in lawful political activities was clearly in violation of his constitutional rights under the First and Fifth Amendments of the Constitution; that he had been informed by his attorney that under applicable regulations the hearing afforded by the Army would be a sham in that he would have no right at the hearing to confront those who testified against him or to cross-examine so-called confidential informants, etc.

Shortly thereafter, he received an undesirable discharge. Applications for review by the Army Discharge Review Board and the Army Review Board for the Correction of Military Records were denied. Thus, it appears that plaintiff has exhausted his administrative remedies.

Plaintiff filed a motion for summary judgment and defendant filed a motion to dismiss or cross-motion for summary judgment. Thus, counsel for the parties have conceded that there are no genuine issues of material fact to be decided.

Defendant contends, in substance, that the action of the Secretary of the Army in issuing the undesirable discharge on the basis of plaintiff's conduct while a member of the United States Army Reserve, Ready Reserve, was within the scope of his statutory powers and therefore the Court lacks jurisdiction to inquire further into the exercise by the Secretary of his administrative discretion in issuing the discharge.

Plaintiff, on the other hand, contends that this Court has jurisdiction to grant relief since defendant's action exceeded his statutory powers either express or implied. As a member of the Ready Reserve of the Army, plaintiff argues that he is in all essential respects a "civilian" and thus not subject to what is, in effect, a punitive discharge based on activity carried on while in reserve status, since "the type of discharge to be issued is to be determined solely by the soldiers' military record in the Army". Harmon v. Brucker, 1958, 355 U.S. 579, 583, 78 S.Ct. 433, 435, 2 L.Ed.2d 503.

The quoted language in the Harmon opinion, however, was used in disapproving a less than honorable discharge based on activities and associations *prior to induction*. This is the factor that distinguishes Harmon from the present case. Prior to induction into the military service as well as after dis-

charge, it is clear that a person is a "civilian" and is in no sense subject to military regulation. Harmon v. Brucker, supra; United States ex rel. Toth v. Quarles, 1955, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8. However, between induction and discharge, the individual is subject to military control to a greater or lesser degree. When he is on active duty, he is subject to the daily beck and call of his military superiors. The reservist on inactive duty, on the other hand, is in a status of relatively reduced military responsibility. But he has an obligation to maintain himself in a state of readiness for full-time military service.

Title 10, Section 262 of the U.S.C.A., states as follows:

"The purpose of the reserve components is to provide trained units and qualified persons available for active duty in the armed forces, in time of war or national emergency and at such other times as the national security requires, to fill the needs of the armed forces whenever, during, and after the period needed to procure and train additional units and qualified persons to achieve the planned mobilization, more units and persons are needed than are in the regular components. Aug. 10, 1956, c. 1041, 70A Stat. 10."

▇▇ Thus, Congress clearly intended the United States Army Reserve, Ready Reserve, to constitute an integral part of the Army. Since the reserve forces are geared toward the possibility of active military duty, the required qualifications of a soldier are the same whether he be on active duty or in the reserves. Availability for assignments involving classified matter and assured reliability in this respect is of great importance. Proper screening of reservists cannot wait until the call to war comes but must be a continuing process. Cf. 10 U.S.C.A. § 271. If evidence should be developed that the retention of a reservist in the military establishment is not clearly consistent with national security, it is conceded by plaintiff's counsel that the Secretary has the power to terminate all connection of the reservist with the Army by issuing a discharge. Cf. 10 U.S.C.A. § 3811. Counsel contends, however, that such discharge must be an "honorable" one. However, the very kind of information that may justify termination of service prior to the end of the usual period is also relevant in deciding the nature of the discharge to be granted. The "honorable" discharge has been characterized as:

"* * * a formal final judgment passed by the government upon the entire military record of the soldier, and * * * an authoritative declaration that he has left the service in a status of honor." Griffin v. United States, D.C.Ark.1953, 115 F.Supp. 509, 514 citing United States v. Kelly, 1873, 15 Wall. 34, 82 U.S. 34, 21 L.Ed. 106.

Much like a letter of reference from a former employer, it signifies approval of a person's performance while in the Army. It cannot be said that the defendant exceeded his statutory powers in denying such approval to the plaintiff. The Army should not be forced into the dilemma, on the one hand of having to retain a person in the reserves whose reliability in relation to national security may be in doubt or, on the other, of terminating his service with the accolade of "honorable" upon his record.

Defendant's motion for summary judgment is granted. Counsel will prepare an appropriate order.