**NORDMANN v. WOODRING, Secretary
of War, et al.
No. 26 Civil.**

District Court, W. D. Oklahoma.
June 30, 1939.

John W. Tyree, of Lawton, Okl., for plaintiff.

Wade H. Loofbourrow and George H. McElroy, Asst. U. S. Attys., both of Oklahoma City, Okl., for defendants.

VAUGHT, District Judge.

This is an action by the plaintiff to review an order of discharge directed by the Secretary of War. The facts are stipulated.

The plaintiff, a native of Sweden, illegally entered the United States on or about January 30, 1923, and on November 17, 1923, enlisted in the United States Army, and has had practically continuous service therein to the date of the commencement of this action. He has never left the United States since his first entry except as hereinafter stated. On June 18, 1938, the plaintiff was honorably discharged from the United States Army on account of the completion of the term of his enlistment, and on June 24, 1938, re-enlisted for a term of three years. Prior to his last discharge the plaintiff held a warrant as Sergeant in Company F, 28th Quartermaster Regiment (T-C), and was re-enlisted as above stated on June 24, 1938 in the same grade. The plaintiff has had more than fourteen years of honorable service in the United States Army and holds five certificates of honorable discharge therefrom, each showing character excellent. His monthly pay as a sergeant

in the Quartermaster Corps in the United States Army was $62.10, with monthly allowance for rations of approximately $14.

Pursuant to certain Acts of Congress during the years 1937, 1938 and 1939, with reference to requirements as to citizenship in the United States of enlisted men in the United States Army, the plaintiff was discharged on September 8, 1938, under order of the Secretary of War on the ground that the plaintiff had failed legally to declare his intention to become a citizen during the term he was serving on August 19, 1937 and, therefore, was not entitled to re-enlist on June 24, 1938.

On August 31, 1937, the plaintiff exercised due diligence in his attempt to legally enter the United States and did everything in his power to legally enter the United States prior to June 18, 1938, the date of his discharge. On the 20th day of October, 1938, the plaintiff entered Mexico from El Paso, Texas, at Ciudad Juarez, Mexico, and presented his application for a non-quota visa to the Consul General at that place. The application was granted and the plaintiff returned to the United States on the same date.

Because of the excellent record of this soldier, the Commandant at Fort Sill, Oklahoma, on September 17, 1938, requested the War Department to reconsider its decision ordering the discharge of the plaintiff, and on October 6, 1938, the Secretary of War again ordered the discharge of the plaintiff, as directed in the order of September 8, 1938.

The action of the Secretary of War in ordering the discharge of the plaintiff was based solely on the opinions of the Judge Advocate General of the Army that plaintiff's re-enlistment of June 24, 1938, was in violation of the provisions of the Act "For the protection of certain enlisted men of the Army," approved August 19, 1937, 50 Stat. 696, and the provisions of the second proviso under "Pay of the Army" of the Military Appropriations Act of 1939, approved June 11, 1938, 52 Stat. 642. Under the provisions of this act, the plaintiff's warrant as sergeant would terminate upon the date of his discharge from the service unless he re-enlisted within twenty days after the date of such, and any re-enlistment after the expiration of the twenty days would necessarily be in the grade of private at the rate of pay of $21 per month, plus longevity pay.

This action was instituted on October 14, 1938. Upon the filing of the complaint a temporary restraining order was issued enjoining the commanding officer from the discharge of this soldier.

The defendants in this case, Colonel Augustine McIntyre, as Commandant of the Field Artillery School and Fort Sill, Oklahoma, Major Leonard S. Woods, as the Quartermaster of the Field Artillery School and Fort Sill, and Major Paul G. Rutten, as Company Commander of Company F, 28th Quartermaster Regiment of the United States Army, filed a motion to dismiss.

The first question raised is the jurisdiction of this court to review a discharge of an enlisted soldier upon order of the Secretary of War.

The second question raised is the construction of the statute as to whether or not the Secretary of War acted pursuant to the provisions of the Acts above mentioned in the discharge of this soldier.

There are certain other questions raised in the motion, including service upon the Secretary of War and the venue of the action, but in view of the decision of this court on the first question, it is unnecessary to give attention to other questions raised.

As to the second proposition, the court does not hesitate to state, in view of the record of this soldier, his efforts to comply with the provisions of the law and the attitude of his commanding officers, that a reasonable construction of the statute could have been made which would have permitted the retention of this soldier in the Army under his status at the time of discharge. However, this court, in its judgment, is precluded from reviewing the acts of the Secretary of War, by limitations which have been placed by Congress upon the jurisdiction of the court.

The President of the United States is the Commander in Chief of the Army. The immediate inferior officer under the President is the Secretary of War and the power to make regulations, the general discipline of the Army, its organization, are all vested in the Executive Department. This court has no power to review the orders of the commanding officer of the Army unless Congress vested the court with such power.

10 U.S.C.A. § 1580 provides: "No enlisted man, lawfully inducted into the military service of the United States, shall

be discharged, from said service without a certificate of discharge, signed by a field officer of the regiment or other organization to which the enlisted man belongs or by the commanding officer when no such field officer is present; and no enlisted man shall be discharged from said service before his term of service has expired, except by order of the President, the Secretary of War, the commanding officer of a department, or by sentence of a general court-martial."

■ The power to discharge, therefore, is vested in the commanding officer of the Army and an order of discharge emanating from the Secretary of War or the commanding officer of a department is not subject to review by the courts.

The cases bearing upon this question are limited. In the case of Reid v. United States, D.C., 161 F. 469, 471, writ of error dismissed, 211 U.S. 529, 29 S.Ct. 171, 53 L.Ed. 313, the question involved in the case at Bar is fully discussed and in that case the court said:

"The articles of war constitute the only statutory declaration concerning discharges from the military service (Rev. St. § 1342 (U.S.Comp.St.1901, p. 945). Article 4 provides:

"'* * * No discharge shall be given to any enlisted man before his term of service has expired except by order of the President, the Secretary of War, the commanding officer of a department or by sentence of a general court martial.'

"And this language has remained unchanged in the statutes since 1806.

"I am quite unable to perceive how the President's right to terminate a soldier's engagement could be more explicitly recognized, and indeed conferred, if recognition seems to imply some antecedent right. This fourth article of war clearly assumes that discharges may be granted before expiration of service; the power to grant them implies the power to impose them, unless a soldier have some rights inherent in his contract or inferable from the nature of his occupation. This petitioner's contract is civilly but a hiring at the will of the employer, while the nature of his occupation, so far from varying that status, has been frequently so judicially defined as to leave no doubt of congressional intent. 'The recruit is bound to serve during the full term of his enlistment, but * * * the government is not bound to continue

him in service for a single day, but may dismiss him at the very first moment or at any subsequent period whether with or without cause for so doing.' United States v. Cottingham, 1 Rob. (Va.) [615] at page 629, 40 Am.Dec. 710."

In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 55, 34 L.Ed. 636, the court said: "By enlistment the citizen becomes a soldier. His relations to the state and the public are changed. He acquires a new status, with correlative rights and duties; and although he may violate his contract obligations, his status as a soldier is unchanged. He cannot of his own volition throw off the garments he has once put on, nor can he, the state not objecting, renounce his relations and destroy his status on the plea that, if he had disclosed truthfully the facts, the other party, the state, would not have entered into the new relations with him, or permitted him to change his status."

■ It is true that a soldier has rights the same as any other citizen of the United States and while the plaintiff in this case was not a citizen, his long and honorable service as a soldier are such as to require a recognition of whatever rights he possesses by virtue of his service as a soldier in the United States Army. This court cannot assume that, merely because the commanding officer of the Army has placed a construction upon a strictly military statute which may be in conflict with the judgment of the court, the decision of the commanding officer is subject to court review.

■■ Congress has placed certain responsibilities upon the Commander in Chief and subordinate officers of the Army which are as definite and certain as the duties and powers granted to courts. There are certain limitations placed upon powers of courts beyond which a court cannot go, and these involve the discretionary powers of the Executive Department. In this particular case a great injustice may have been done the plaintiff, at the same time if the courts assume the power to review every official act of an officer of the Army involving the conduct of many thousands of enlisted men, a condition might result which would not only be embarrassing to the courts and to the Executive Department but would in effect destroy the organization and discipline of the Army. Congress has seen fit to lodge the power to discipline the Army and the power to

discharge an enlisted man prior to the termination of his enlistment, in the President, the Secretary of War and the commanding officer, and it is not the function of the court to question the wisdom or the advisibility of an Act of Congress so long as it is not in direct conflict with the provisions of the Constitution.

Under Section 2, Article 2 of the Constitution, U.S.C.A. the President is made the Commander in Chief of the Army and the Navy of the United States. Under this section, as Commander in Chief, the President has the power to employ the Army and the Navy in a manner which he may deem most effectual. This includes the power to establish rules and regulations for the government of the Army and the Navy and such regulations made pursuant to the authority thus conferred upon the President, have the force of law. When promulgated through the Secretary of War they must be received as the acts of the President and as such must be binding upon all within the sphere of his authority. Confiscation Cases, 20 Wall. 92, 109, 22 L.Ed. 320; Smith v. Whitney, 116 U.S. 167, 6 S.Ct. 570, 29 L.Ed. 601; Johnson v. Sayre, 158 U.S. 109, 114, 15 S.Ct. 773, 39 L.Ed. 914.

If in this case the Secretary of War exercised his best judgment as to his right to discharge the plaintiff under all of the circumstances surrounding the case, his act was a discretionary act and is not subject to review by the courts.

The motion to dismiss must be sustained. An exception is allowed.